IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Wilhelmina Washington, ) | C/A No.   4:14-cv-00416-RBH-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.           ) | |
| ) | REPORT AND RECOMMENDATION |
| Alan Wilson, in his individual capacity as ) | |
| Attorney General of the State of South ) | |
| Carolina, Wayne Allen Myrick, Jr., in his ) | |
| individual capacity as Senior Assistant ) | |
| Deputy Attorney General, Megan Wines ) | |
| Burchstead, in her individual capacity as ) | |
| Assistant Attorney General, Jon E. Follin, ) | |
| III, in his individual capacity as Special ) | |
| Agent with the South Carolina Law ) | |
| Enforcement Division, the Office of the ) | |
| South Carolina Attorney General, and the ) | |
| South Carolina Law Enforcement Division, ) | |
| ) | |
| Defendants. ) | |
| ) | |

I.     Introduction

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging supervisory liability and violations of Plaintiff's constitutional rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments.  Plaintiff also asserts state law claims for abuse of process, intentional infliction of emotional distress, civil conspiracy, and gross negligence for negligent supervision under the South Carolina Tort Claims Act ("SCTCA"). Presently before the court are Defendants Alan Wilson, Wayne Allen Myrick, Jr., Megan Burchstead, and the South Carolina Attorney General's Office's Motion to Dismiss. ECF No. 8. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because

this Motion is potentially dispositive of Plaintiff's claims against these Defendants, this Report and Recommendation is entered for review by the district judge.

II.     Background

In January of 2014, Plaintiff filed suit against Defendants in state court, and subsequently, the case was removed. ECF No. 1-1. Plaintiff brought suit after certain criminal charges against her were dismissed by the South Carolina Attorney General's Office ("SCAG"). *Id.* ¶ 19. In 2011, Plaintiff was arrested and indicted for two counts of forgery in violation of section 16-13-0010 of the South Carolina Code and two counts of misconduct in office in violation of section 17-25-0030 of the South Carolina Code. *Id.* ¶ 10. The charges stemmed from Plaintiff's work as the Timmonsville Town Court Clerk. *Id.* ¶ 24(a). In November of 2012, a trial on those charges resulted in a mistrial due to a hung jury. *Id.* ¶ 11. Plaintiff was re-tried on the original charges in July of 2013, which also resulted in a mistrial due to a hung jury. *Id.* ¶ 27. Between the first and second trials, Plaintiff was charged with an additional count of forgery and misconduct while in office.  *Id.* ¶ 15. However, before the second trial, the state court quashed the new indictments against Washington, and the case proceeded to a jury trial on the original charges only. *Id.* ¶ 27. The State dismissed the indictments against Plaintiff's after the second trial. *Id.* ¶ 29. This civil action followed.

In Plaintiff's Complaint, she maintains that the criminal prosecution against her was "retaliatory and vindictive." *Id.* ¶ 24(k). Further, she argues that the State's motive in originally bringing the charges against her was her unwillingness to aid in the State's ongoing investigation into many matters in Timmonsville—that the Defendants "were attempting to use the criminal charges against [her] to further that investigation by coercing [her] assistance through criminal prosecution." *Id.* ¶ 24(f).  Plaintiff claims that the second

prosecution against her was brought due to her (1) unwillingness to cooperate with the State's ongoing investigation; (2) her demand for a jury and speedy trial; and (3) her effectively presenting a defense in her first trial. *Id.* ¶ 24(k).

Additionally, Plaintiff claims that Defendant Burchstead and Defendant SCAG violated Rule 5 and *Brady*[1] by failing to provide her with material evidence. *Id.* ¶ 24(m). Further, Plaintiff alleges that Defendant Burchstead and Defendant SCAG violated her 5th, 6th, and 14th Amendments "by using the grand jury process as a 'mere plaything' in order to coerce [her] assistance in the ongoing investigation into other matters in Timmonsville. . . ." *Id.* ¶ 24(n). Plaintiff maintains that the investigative and supervisory actions and inactions taken by all Defendants constitute conduct which amounts to "willful, wanton, reckless, malicious and intentional bad faith conduct which harmed [] Plaintiff." *Id.* ¶ 30. Finally, Plaintiff contends that Defendants Burchstead, Myrick, Wilson, and the SCAG acted outside their roles as advocates and in an investigatory and administrative manner. *Id.* ¶ 31.

III.    Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, Plaintiff must only plead "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). In order for Plaintiff's Complaint to survive Defendants' Rule 12(b)(6) Motion to Dismiss, Plaintiff does not need to plead detailed factual allegations in her Complaint. *See id*. However, the United States Supreme Court has held that a plaintiff's grounds for relief requires more than just stating legal conclusions and elements of a cause of action. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that, on a motion to dismiss, a court is

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

"not bound to accept as true a legal conclusion couched as a factual allegation."). Plaintiff's complaint must contain sufficient factual allegations that make a claim for relief plausible, not just possible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.*, 550 U.S. at 570. This court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in her favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011).

IV.   Discussion

A.  Law Applicable to Common Law Absolute Prosecutorial Immunity Claim

In their Motion to Dismiss, Defendants argue they are immune from Plaintiff's claims under common law prosecutorial immunity, relying heavily on the holdings of *Imbler v. Pachtman*, 424 U.S. 409 (1976). ECF No. 8 at 4-7. Before considering this argument, review of key cases concerning absolute prosecutorial immunity is appropriate.

1. *Imbler v. Pachtman*, 424 U.S. 409 (1976)

In *Imbler v. Pachtman*, the United States Supreme Court held that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution and in presenting the State's case was absolutely immune from civil liability under § 1983. 424 U.S. at 430. There, Imbler was granted habeas relief from a first-degree murder conviction. *Id.* at 416. A California district court found that eight instances of misconduct by the State occurred at Imbler's trial. *Id.* at 414. In a subsequent § 1983 action, Imbler brought suit against the prosecutor, Pachtman, and several police officers. *Id.* at 415. Imbler claimed that a conspiracy among the state officers existed to unlawfully charge and convict him of murder. *Id.* at 415-16. Additionally, Imbler claimed Pachtman allowed a witness to give false testimony, suppressed a fingerprint expert's evidence, proceeded with

the prosecution with knowledge that a lie detector test had cleared Imbler, and altered a police artist's sketch of the victim's killer made shortly after the crime and used the sketch at trial. *Id.* at 416.

Ultimately, the district court granted Pachtman's Rule 12(b)(6) motion to dismiss and held public prosecutors are immune from "acts done as part of their traditional official function." *Id.* The Ninth Circuit Court of Appeals affirmed the district court, and the United States Supreme Court affirmed that decision after granting certiorari to consider prosecutorial liability. *Id.* at 416-17. The *Imbler* Court held that a prosecutor is immune from suit when his "activities [are] intimately associated with the judicial phase of the criminal process . . . ." *Id.* at 430. In particular, the Court recognized that prosecutorial duties include "initiating a prosecution and [] presenting the State's case . . . ." *Id.* at 431. Moreover, the Court reasoned: "The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Id.* at 424-25.[2]

2. *Burns v. Reed*, 500 U.S. 478 (1991)

In a later case, the United States Supreme Court held that a prosecuting attorney is absolutely immune from liability for damages in a § 1983 case for participating in a probable cause hearing, but not for giving legal advice to the police prior to an arrest. *Burns*, 500 U.S. 478. There, Burns called police and claimed "that an unknown assailant had entered her house, knocked her unconscious, and shot and wounded her two sons while they slept." *Id.* at 481. Eventually, police believed Burns was the perpetrator but speculated that she had multiple personalities. *Id.* at 481-82.

---

[2] The *Imbler* Court expressly declined to decide whether absolute immunity extends to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." *Id.* at 430-31.

Reed, the state prosecutor, told police they could question Burns under hypnosis. *Id.* at 482. While hypnotized, Burns referred to both herself and the assailant as "Katie," and police interpreted the references as support for their multiple-personality theory. *Id.* Thereafter, Reed told police that they "probably had probable cause" to arrest her. *Id.* In a subsequent probable-cause hearing, an officer testified about Burns' questioning but did not reveal to the court that the statements were obtained while Burns was under hypnosis. *Id.* at 482-83. Thereafter, the warrant was issued, and Burns was charged with attempted murder. *Id.* at 483. However, charges were eventually dropped when Burns' motion to suppress the statements given under hypnosis was granted before trial. *Id.*

Burns then brought a § 1983 suit against Reed, and the district court granted Reed a directed verdict, finding Reed was absolutely immune from liability for his conduct. *Id.* The Court of Appeals for the Seventh Circuit affirmed, holding that he was absolutely immune from liability for giving legal advice to the officers and for his conduct at the probable-cause hearing. *Id.* On review, the Supreme Court relied on the reasoning in *Imbler* to hold that Reed was entitled to absolute immunity for his actions in the probable-cause hearing because there Reed was acting as an advocate of the state rather than acting as an administrator or investigative officer. *Id.* at 488-92. However, the Court held that Reed was not entitled to absolute immunity for giving legal advice to police because that action was not closely associated with the judicial process. *Id.* at 495. In its holding the Court reasoned "[a]bsolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation." *Id.* at 494.

       3.  *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)

In *Buckley v. Fitzsimmons*, the Supreme Court held that a prosecutor was not entitled to absolute immunity for manufacturing false evidence against Buckley or for defaming Buckley in a press conference. 509 U.S. 259. There, Buckley alleged that Fitzsimmons "shopped" for an expert to establish a link between his boot and a boot print at the crime scene. *Id.* at 272. However, three other experts had already reviewed the boot and the boot print and were "unable to make a reliable connection between the print and the pair of boots that petitioner had voluntarily supplied . . . ." *Id.* at 262.

The *Buckley* Court held: "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Id.* at 273 (internal citations omitted). In its reasoning the Court noted that the assistant prosecutors were working "hand in hand" with the sheriff's detectives under the joint supervision of Fitzsimmons and the sheriff. *Id.* at 272. Moreover, the Court reasoned that "[t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." *Id.* at 273. The Court further held that a prosecutor is not an advocate of the State before he has probable-cause to make an arrest. *Id.* at 274.

B.  Defendants' Claim of Common Law Absolute Prosecutorial Immunity

In their Motion to Dismiss, Defendants argue they are immune from Plaintiff's claims under common law prosecutorial immunity, relying heavily on the holdings of *Imbler*. *See* ECF No. 8 at 4-7. Additionally, Defendants argue that the acts on which Plaintiff bases her claims against the SCAG Defendants are "quintessentially the acts of prosecutors acting

7

within the course and scope of their duties as prosecutors." *Id.* at 4. Specifically, Defendants argue the following alleged acts are duties of prosecutors for which immunity attaches:

- Deciding to bring additional charges between the first and second trials;

- Failing to disclose a specific audio file in a purported violation of *Brady* and Rule 5 of the South Carolina Rules of Criminal Procedure; and

- Using the grand jury process to coerce Plaintiff's assistance in the ongoing investigation into other matters in Timmonsville and in retaliation for Plaintiff's assertion of her right to a jury/speedy trial and present a defense.

*Id.* at 4-5.

In response, Plaintiff argues that Defendants are not entitled to absolute immunity as prosecutors because her Complaint adequately alleges that the conduct of SCAG Defendants was outside their roles as advocates. ECF No. 9 at 2. Additionally, Plaintiff maintains that a prosecutor is not afforded absolute immunity when performing "functions as an administrator rather than an officer of the court" or when a prosecutor performs "investigative functions normally performed by a detective or a police officer." *Id.* at 3. Moreover, Plaintiff contends that her entire prosecution was a "farce" and "merely and investigative tactic meant to coerce her into providing information to assist in other investigations." *Id.* at 4. At a minimum, Plaintiff argues the conduct of the SCAG Defendants presents a factual question to be presented to the jury. *Id.* at 5. Finally, Plaintiff argues that she specifically pled supervisory liability under § 1983 against Defendants Wilson, Myrick, and SCAG and the administrative conduct alleged in those pleadings would not entitle these Defendants to absolute immunity. *Id.* at 6.

As an initial matter, the undersigned considers Plaintiff's argument—whether the SCAG Defendants' conduct was prosecutorial in nature should be a jury question. The United States Supreme Court has instructed that threshold questions concerning immunity should be resolved prior to trial. *See e.g.*, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (holding immunity is "*immunity from suit* rather than a mere defense to liability" and stressing "the importance of resolving immunity questions at the earliest possible stage in litigation.") (emphasis in original) (internal citations omitted); *Siegert v. Gilley*, 500 U.S. 226, 231 (1991) ("Until this *threshold* immunity question is resolved, discovery should not be allowed.") (emphasis in original) (internal citation omitted). The *Siegert* Court reasoned that "[o]ne of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Id.* at 232. Therefore, whether the SCAG Defendants' actions were prosecutorial is a question for the court, not a jury, and Plaintiff's request to proceed to trial on this issue is denied.

Accordingly, the undersigned will review the allegations in Plaintiff's Complaint to determine whether Defendants should be afforded absolute immunity. Specifically, the undersigned will review each of Plaintiff's specific allegations and apply a "functional approach" to examine the nature of the function Plaintiff alleged Defendants performed. *See Buckley*, 509 U.S. at 269.

### 1. Charging and Indicting Plaintiff

In her Complaint, Plaintiff argues the State brought the original charges against her based on her failure to aid in the State's ongoing investigation. *Id.* ¶ 24(f). Similarly, Plaintiff claims that the second prosecution against her was brought because of her (1) unwillingness

to cooperate with the State's ongoing investigation; (2) her demand for a jury and speedy trial; and (3) her effectively presenting a defense in her first trial. *Id.* ¶ 24(k). Plaintiff takes issue with the State's timing in bringing additional charges against her in 2013, and maintains that certain investigation materials substantiating the additional charges existed prior to her original arrest and were not based on new investigative information. *Id.* at ¶ 24(g)-(k).

Assuming these allegations are true, the Defendants' roles in procuring Plaintiff's arrest and indicting her fall squarely under *Imbler*. 424 U.S. 409.  In *Imbler,* the prosecutor was accused of maliciously and unlawfully charging the plaintiff with murder, and the Supreme Court found he was entitled to absolute prosecutorial immunity. *Id.* at 415-16. Further, the *Imbler* Court specifically held that absolute immunity protects prosecutors' decisions "whether and when to prosecute." *Id.* at 431 n.33.

The Fourth Circuit Court of Appeals addressed the contention that immunity does not lie for an Assistant State Attorney's advice to a police officer to initiate a prosecution in *Springmen v. Williams*, 122 F.3d 211, 212 (4th Cir. 1997). There, the court held that "[t]he doctrine of absolute immunity squarely covers a prosecutor's decision to go forward with a prosecution." *Id.* at 212-13. Moreover, the *Springmen* court broadly held that absolute prosecutorial immunity "protects decisions that are integrally related to the charging process, such as Williams' decision to approve the prosecution here." *Id.* at 212.

The Fourth Circuit Court of Appeals ruled similarly in *Lyles v. Sparks*, 79 F.3d 372, 377 (4th Cir. 1996). There, Edmond and Lyles brought suit against various postal inspectors and the Assistant United States Attorney after the government dismissed their indictment for mail fraud. *Id.* at 374. In their civil action, Edmond and Lyles claimed that their

10

constitutional rights were violated by the postal inspectors and attorney's involvement in securing their indictment and arresting them. *Id.* at 374-75. The *Lyles* court held that Edmond's claim against the Attorney for prosecuting Lyles implicates conduct that *Imbler* expressly found to be shielded by absolute immunity. *Id.* at 377. Moreover, the court extended the *Imbler* holding to an attorney's presentation of testimony to a grand jury. *Id.* ("The presentation of testimony and other evidence before an indicting grand jury is a prosecutorial activity 'intimately associated with the judicial phase of the criminal process.'"). Therefore, the attorney was afforded absolute immunity from claims that she made false representations and suborned perjury before the grand jury that indicted Edmond and Lyles. *Id.*

SCAG Defendants' role in indicting Plaintiff, on both the original charges and additional charges brought between her trials, fall squarely within their prosecutorial roles as advocates for the State. The court recognizes Plaintiff's argument that the prosecutions against her were actually investigative tactics. However, this argument merely addresses the motivation for prosecuting Plaintiff and does not examine the nature of the function Defendants performed as required by *Buckley*, 509 U.S. at 269. In pursuing criminal charges against Plaintiff, Defendants were acting as advocates of the State, and such action is intimately associated with the judicial phase of the criminal process. Moreover, as Plaintiff noted, the South Carolina Court of Appeals held that a state prosecutor is immune from personal liability under § 1983 for actions relating to the prosecution of an individual as a criminal defendant *regardless of the prosecutor's motivation*. *Williams v. Condon*, 553 S.E.2d 496, 509 (S.C. Ct. App. 2001) (emphasis added); *see also Dory v. Ryan*, 25 F.3d 81,

83 (2d Cir. 1994) ("[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate.").

Accordingly, SCAG Defendants are entitled to absolute immunity for the § 1983 allegations arising out of their bringing original charges and additional charges against Plaintiff, even assuming SCAG Defendants' motive in the indictments was Plaintiff's failure to cooperate in an ongoing investigation. Therefore, the undersigned recommends the court grant Defendants' Motion to Dismiss based on absolute prosecutorial immunity concerning the indictments.

### 2. Withholding Evidence

In her Complaint, Plaintiff alleges that Defendants Follin, Burchstead, and SCAG failed to disclose material evidence which directly contradicted and called into question testimony Defendant Follin provided at trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). ECF No. 1-1 ¶ 24(m). Specifically, Plaintiff maintains Defendants failed to disclose an audio file that contradicted Defendant Follin's testimony from the first trial. *Id.*

Assuming these allegations are true, the "functions" Defendants Burchstead and SCAG allegedly performed also fall squarely under *Imbler*. 424 U.S. 409. There, plaintiff accused the state prosecutor of failing to disclose a fingerprint expert's evidence and results of a lie detector test that cleared him. Moreover, Imbler alleged the prosecutor allowed a witness to give false testimony and altered a police artist's sketch of the victim's killer. *Id.* at 416. Nevertheless, the Supreme Court found the prosecutor was immune from suit because his actions were "intimately associated with the judicial phase of the criminal process." *Id.* at 430. Specifically, the Court held that prosecutors are immune from civil suit for initiating a prosecution and presenting the State's case. *Id.* at 431. Furthermore the Court recognized that

a prosecutor's "possible knowledge of a witness' falsehoods [and] the materiality of evidence not revealed to the defense" are typical issues prosecutors face in post-conviction-relief trials. *Id.* at 425. Finally, the Court found that "[d]efending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials." *Id.* at 425-26.

Additionally, the Fourth Circuit Court of Appeals addressed the issue of a prosecutor's failure to disclose evidence in *Carter v. Burch*, 34 F.3d 257 (4th Cir. 1994). There, Carter accused Burch of failing to turn over material evidence concerning both statements made by the victim and the victim's emotional state. *Id.* at 260. There was conflicting evidence about whether Burch learned about this evidence before Carter's trial or after Carter's conviction. *Id.* at 262. However, the court held that "[i]n either situation, Burch was clearly protected by absolute immunity" because he was acting as an advocate of the State. *Id.* The *Carter* court reasoned that "[s]uch a decision was clearly intended by *Imbler* to be the type of prosecutorial function for which absolute immunity should be granted." *Id.* Finally, the court held: "The decision whether to turn this evidence over to defense counsel would have occurred after Carter's arrest, but before his conviction, and is clearly part of the presentation of the State's case." *Id.* at 263.

Defendants Burchstead and SCAG's alleged decisions to withhold evidence falls within their prosecutorial roles as advocates for the State. Accordingly, these Defendants are entitled to absolute immunity for the § 1983 allegations arising out of withholding evidence. Therefore, the undersigned recommends the court grant Defendants' Motion to Dismiss based on absolute prosecutorial immunity concerning the § 1983 causes of action.

3. Investigatory/Administrative Roles and Civil Conspiracy

Plaintiff argues that she alleged several facts in her Complaint which are overt acts that Defendants committed in furtherance of a conspiracy aimed at injuring her. ECF No. 9 at 9. To support this assertion, Plaintiff points to specific actions Defendants took during her prosecution. *Id.* at 9-12 (citing ECF No. 1-1 ¶¶ 15, 17, 20, 24, 25, 26).

Regardless of whether Defendants acts were taken in furtherance of a conspiracy, Defendants at all times acted as advocates of the State during the judicial stage of the criminal process. Moreover, Plaintiff cannot side-step the absolute immunity afforded to Defendants against these claims by including them in a conspiracy cause of action:

> It would be cold comfort for a prosecutor to know that he is absolutely immune from direct liability for actions taken as prosecutor, if those same actions could be used to prove him liable on a conspiracy theory involving conduct for which he was not immune. "[T]he vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system" would be unduly chilled. *Imbler v. Pachtman*, 424 U.S. 409, 427–28, 96 S.Ct. 984, 993–94, 47 L.Ed.2d 128 (1976). That is why acts for which a prosecutor enjoys absolute immunity may not be considered as evidence of the prosecutor's membership in a conspiracy for which the prosecutor does not have immunity.

*Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1282 (11th Cir. 2002); *see also Rehberg v. Paulk*, 611 F.3d 828, 842 (11th Cir. 2010) (noting prosecutor entitled to absolute immunity for the pre-indictment conduct of conspiring to make up and present false testimony to the grand jury, when the evidence of the prosecutor's involvement in the alleged conspiracy was the testimony before the grand jury, which is itself entitled to absolute immunity); *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 579-80 (8th Cir. 2006) (finding prosecutor is absolutely immune from a civil conspiracy charge when his alleged participation in the conspiracy consists of otherwise immune acts).

Based on their specific actions, as alleged by Plaintiff, Defendants are entitled to absolute prosecutorial immunity though Plaintiff characterized Defendants' actions as part of

14

a civil conspiracy. The undersigned notes Plaintiff's request to move, pursuant to Rule 15 of the Federal Rules of Civil Procedure, to amend her Complaint if the court finds these particular allegations must be separated out and applied only to the civil conspiracy causes of action. ECF No. 9 at 11. However, the court's finding is not based on Plaintiff's failure to sufficiently plead the necessary elements of a civil conspiracy.[3] Rather, the court's ruling is based on the doctrine and application of absolute prosecutorial immunity.[4] Controlling authorities have not withheld immunity from defendants based on allegations of civil conspiracy. Accordingly, the undersigned recommends the court grant Defendants' Motion to Dismiss concerning Plaintiff's allegations that Defendants committed overt acts in furtherance of a conspiracy aimed at injuring her.

4. Supervisory Role of SCAG Defendants

Plaintiff argues that she sufficiently asserted causes of action for supervisory liability under § 1983 against Defendants Wilson, Myrick, and SCAG. ECF No. 9 at 6. Plaintiff maintains that a prior case involving Defendant SCAG, *Odom v. Wilson, et a.l,* 2012-210914, which was argued before the South Carolina Supreme Court on June 6, 2012, establishes a pattern of misconduct and actual knowledge of prior, similar conduct by Defendant Burchstead. *Id.* at 6-7. In her Complaint, Plaintiff alleged that Defendants Wilson, Myrick, and SCAG knew of a pervasive and unreasonable risk of constitutional injury to citizens like Washington. ECF No. 1-1 at ¶¶ 67, 73, 91. Additionally, Plaintiff alleged these Defendants had a duty to supervise, train, and discipline and knew or should have known that their

---

[3] Based on SCAG Defendants' clear prosecutorial immunity, the undersigned is not opining on whether Plaintiff's pleadings were too conclusory under the *Iqbal-Twombly* pleading standard. *See* ECF No. 8 at 8-9 (referencing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[4] If the court accepts this recommendation, Plaintiff's pending Motion to Amend her Complaint, ECF No. 10, will be moot.

supervision was inadequate. *Id.* at ¶¶ 68, 69, 74, 75, 76, 77, 92, 93, 94, 95. Plaintiff relies heavily on the holdings of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to impose liability on defendant-supervisors. ECF No. 9 at 8-9.

Whether "[p]ost-*Iqbal* courts have continued to recognize supervisory liability under § 1983" or whether Plaintiff pleaded sufficient facts to withstand a motion to dismiss for her negligent supervision causes of action are unnecessary inquiries. *See id.* at 8-9. Rather, the undersigned must consider whether supervising prosecutors should be afforded absolute prosecutorial immunity. In that regard, the Supreme Court has held that supervisory prosecutors also enjoy absolute immunity. *Van de Kamp v. Goldstein*, 555 U.S. 335, 345 (2009).

In *Van de Kamp*, a plaintiff filed a § 1983 action following his release from prison after he was granted habeas relief. *Id.* at 339-40. Plaintiff brought suit against a former Los Angeles County district attorney and chief deputy district attorney. *Id.* at 340. In his complaint, plaintiff alleged that the trial prosecutor failed to communicate critical information to plaintiff's trial lawyer. *Id.* Additionally, he alleged that the trial prosecutor's "failure resulted from the failure of petitioners (the office's chief supervisory attorneys) adequately to train and to supervise the prosecutors who worked for them as well as their failure to establish an information system about informants." *Id.*

The Supreme Court held that the attorneys were entitled to absolute prosecutorial immunity because the alleged management tasks concerned how and when to make impeachment information available at trial—which are "directly connected with the prosecutor's basic trial advocacy duties." *Id.* at 346. Additionally, the Court held that "in terms of *Imbler*'s functional concerns, a suit charging that a supervisor made a mistake

16

directly related to a particular trial, on the one hand, and a suit charging that a supervisor trained and supervised inadequately, on the other, would seem very much alike." *Id.* The Court further reasoned that:

> If, as *Imbler* says, the threat of damages liability for such an error could lead a trial prosecutor to take account of that risk when making trial-related decisions, so, too, could the threat of more widespread liability throughout the office (ultimately traceable to that trial error) lead both that prosecutor and other office prosecutors as well to take account of such a risk. Indeed, members of a large prosecutorial office, when making prosecutorial decisions, could have in mind the "consequences in terms of" damages liability whether they are making general decisions about supervising or training or whether they are making individual trial-related decisions. *Imbler,* 424 U.S., at 424, 96 S.Ct. 984. Moreover, because better training or supervision might prevent most, if not all, prosecutorial errors at trial, permission to bring such a suit here would grant permission to criminal defendants to bring claims in other similar instances, in effect claiming damages for (trial-related) training or supervisory failings.

*Id.* at 346-47.

Based on the *Van de Kamp* holdings, Defendants Wilson, Myrick, and SCAG are entitled to absolute prosecutorial immunity for any allegations of supervisory liability made by Plaintiff. Accordingly, the undersigned recommends the court grant Defendants' Motion to Dismiss based on absolute prosecutorial immunity for actions they took as part of their supervisory roles within Washington's prosecution.

### C. Defendants' Absolute Immunity under the South Carolina Tort Claims Act ("SCTCA")

Defendants also maintain that they have absolute prosecutorial immunity under sections 15-78-60(1)-(2) of the South Carolina Code. ECF No. 8 at 7-8. Specifically, Defendants argue sections 15-78-60(1)-(2) completely bar a plaintiff from bringing such a suit against the public entity or its prosecutors acting within the scope of their employment.

*Id.* Therefore, Defendants contend immunity applies to Plaintiff's claims under South Carolina law in addition to Plaintiff's claims under § 1983.

The undersigned finds Defendants are also immune from suit for Plaintiff's state law claims. The SCTCA "is the exclusive civil remedy available for any tort committed by a government entity, its employees, or its agents except as provided in § 15–78–70(b)." *Wells v. City of Lynchburg*, 501 S.E.2d 746, 749 (S.C. Ct. App. 1998) (citing S.C. Code Ann. § 15-78-20). However, section 15–78–20(b) of the SCTCA expressly preserves all existing common law immunities. Applying these principles, the South Carolina Court of Appeals has held that "a prosecutor in the employ of this state is immune from personal liability under § 1983 or the South Carolina Tort Claims Act for actions relating to the prosecution of an individual as a criminal defendant—regardless of the prosecutor's motivation—provided the actions complained of were committed while the prosecutor was acting as an 'advocate,' as defined by *Imbler v. Pachtman* and its progeny." *Williams v. Condon*, 553 S.E.2d 496, 509 (S.C. Ct. App. 2001).

The absolute immunity protecting Defendants from suit arises not from the SCTCA but from common law as discussed above. As recognized in *Williams*, "the *O'Laughlin* Court clearly stated that the provisions of the Tort Claims Act do not supplant common law immunity doctrines. Prosecutorial immunity is a common law immunity doctrine. Accordingly, we find that the Circuit Court properly dismissed the claims Williams instituted pursuant to this act against the prosecutors in their individual capacities" based upon common law prosecutorial immunity. 553 S.E.2d at 508 (citing *O'Laughlin v. Windham*, 498 S.E.2d 689 (S.C. Ct. App. 1998)).

All conduct alleged by Plaintiff concerns actions Defendants took while acting as advocates of the State. Therefore, with regard to Plaintiff's causes of action under South Carolina common law, the undersigned recommends granting Defendants' Motion to Dismiss because they are entitled to absolute immunity.

V.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion to Dismiss, ECF No. 8, be *granted* and that Plaintiff's causes of action against Defendants Alan Wilson, Wayne Allen Myrick, Jr., Megan Burchstead, and SCAG be dismissed with prejudice. If the court accepts this Recommendation, Plaintiff's Motion to Amend, ECF No. 10, should be dismissed as moot.[5]

IT IS SO RECOMMENDED.

July 15, 2014                                                                    Kaymani D. West
Florence, South Carolina                                       United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[5] *See* discussion *supra* Section IV.B.3.

19