UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Wilhelmina Washington, | ) | Civil Action No.: 4:14-cv-00416-RBH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| John E. Follin, III, in his individual capacity | ) | |
| as Special Agent with the South Carolina | ) | |
| Law Enforcement Division; and the South | ) | |
| Carolina Law Enforcement Division, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court for consideration of Plaintiff Wilhelmina Washington's

objections to a discovery order issued by United States Magistrate Judge Kaymani D. West, who

granted in part and denied in part a motion to compel filed by Plaintiff. *See* ECF Nos. 93, 110, & 115.

The Attorney General of the State of South Carolina[1] filed a reply to Plaintiff's objections. *See* ECF

No. 120. The Court affirms the Magistrate Judge's order, except as modified herein.

### Background[2]

This civil lawsuit arises from the criminal prosecution of Plaintiff by the State of South

Carolina. Plaintiff served as a clerk for the Town of Timmonsville municipal court, and she was

arrested in November 2011 on charges of forgery and misconduct in office.[3] The South Carolina Law

Enforcement Division ("SLED") conducted the criminal investigation of the matter; the South Carolina

---

[1]    As explained below, the Attorney General was previously a party to this action but was dismissed by the Court.

[2]    The previous orders in this case detail the underlying facts and procedural history of this lawsuit. *See* ECF Nos. 35, 44, 59, 90, & 110. The Court provides a condensed summary for the purpose of this Order.

[3]    The indictments stemmed from Plaintiff's alleged forgery of a municipal judge's signature in October 2011.

Attorney General's Office ("SCAG") prosecuted the criminal case against Plaintiff. Plaintiff proceeded to a jury trial in November 2012 on indictments charging her with two counts of forgery and two counts of misconduct in office ("the original indictments"). The trial resulted in a hung jury, and the trial judge declared a mistrial. After the first trial, the State indicted Plaintiff on two more charges ("the additional indictments"),[4] but she succeeded in having the additional indictments quashed by the trial judge. In July 2013, Plaintiff proceeded to a second jury trial on the original indictments; the second trial resulted in another hung jury, and the trial judge again declared a mistrial. In December 2013, SCAG notified Plaintiff it would not try her a third time and dismissed the charges. Plaintiff then brought this lawsuit.

## I.    Initial Complaint

Plaintiff filed a complaint in the Court of Common Pleas for Florence County, South Carolina, on January 17, 2014. *See* Complaint, ECF No. 1-1. Plaintiff sued the two above-named defendants: (1) SLED and (2) John E. Follin, III, in his individual capacity as Special Agent with SLED (collectively, "the SLED Defendants"). Plaintiff also named the following four parties as defendants: (1) SCAG, (2) Alan Wilson, in his individual capacity as the Attorney General of the State of South Carolina, (3) Wayne Allen Myrick Jr., in his individual capacity as Senior Assistant Deputy Attorney General, and (4) Megan Wines Burchstead, in her individual capacity as Assistant Attorney General (collectively, "the SCAG Defendants"). Plaintiff brought federal claims under 42 U.S.C. § 1983 and state law claims under the South Carolina Tort Claims Act.[5] In her original complaint (and later in an amended complaint), Plaintiff asserted the following allegation relating to the original indictments and

---

[4]    The State indicted Plaintiff for an additional count of forgery and an additional count of misconduct in office; the indictments alleged Plaintiff committed these crimes in 2009.

[5]    S.C. Code Ann. §§ 15-78-10 to -220 (2005 & Supp. 2015).

2

prosecution:

> Washington was only indicted on the original charges 'after [she] failed to provide law enforcement with any information on **other** matters in Timmonsville.' That there was 'an ongoing investigation into many matters in Timmonsville' and that Burchstead, Follin, SCAG and SLED were attempting to use the criminal charges against Washington to further that investigation by coercing Washington's assistance through criminal prosecution[.]

Compl. at ¶ 24(f), ECF No. 1-1 at 10; Am. Compl. at ¶ 20(f), ECF No. 50 at 6 (first alteration in original). Plaintiff made the following allegation relating to the second and subsequent prosecution:

> The prosecution against Washington was retaliatory and vindictive, in response to Washington not being able to help the State's ongoing investigation into the 'many matters in Timmonsville,' as well as in retaliation for Washington demanding a jury and speedy trial and effectively presenting a defense against the charges at that first trial. Washington argued that actions and failures to act by both Follin and Burchstead violated her due process rights, specifically her constitutional right to a fair trial and her right to a meaningful opportunity to present a full and complete defense under the 5th, 6th and 14th Amendments to the U.S. Constitution[.]

Compl. at ¶ 24(k), ECF No. 1-1 at 10; Am. Compl. at ¶ 20(k), ECF No. 50 at 6. Plaintiff asserted, among other causes of action, a civil conspiracy claim against SLED. Compl. at ¶¶ 42-45, ECF No. 1-1 at 16.

The SCAG Defendants and the SLED Defendants jointly removed the action to this Court on February 18, 2014. ECF No. 1. Pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina, the Clerk of Court automatically referred this case to United States Magistrate Judge Kaymani D. West for all pretrial proceedings. *See* Local Civil Rule 73.02(B)(2)(f) (D.S.C.) (requiring the Clerk to automatically assign magistrate judges to "[a]ll pretrial proceedings in civil rights cases arising out of the criminal process").

3

On February 21, 2014, the SCAG Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 8.  Plaintiff filed a response in opposition and a motion to amend her complaint on March 10, 2014.  ECF Nos. 9 & 10.  Both motions were automatically referred to the Magistrate Judge, who issued a Report and Recommendation recommending that the Court grant the motion to dismiss and deny the motion to amend.  ECF No. 35.  Plaintiff filed timely objections to the Report and Recommendation, and after conducting a de novo review,[6] the Court issued an order adopting in part and rejecting in part the Report and Recommendation.  ECF Nos. 37 & 44.  In its order, the Court (1) dismissed the SCAG Defendants with prejudice on the basis of prosecutorial immunity and (2) granted Plaintiff leave to amend her claims against the SLED Defendants.  ECF No. 44 at 9-10.  The Court denied Plaintiff's motion for reconsideration.  ECF No. 59.

## II.    Amended Complaint and Civil Conspiracy Claim

On October 8, 2014, Plaintiff filed an amended complaint against the SLED Defendants.  *See* Am. Compl., ECF No. 50.  Plaintiff asserted various state and federal claims,[7] again including a civil conspiracy claim against SLED, alleging it conspired with SCAG, Burchstead, Myrick, Wilson, and Follin in an effort to injure and cause special damage to Plaintiff.  *Id.* at ¶¶ 32-35.  The SLED Defendants filed an answer to the amended complaint on October 22, 2014.  ECF No. 57.

---

[6]    The Court conducted a de novo review of the Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), which require a district judge to review de novo those portions of a magistrate judge's proposed findings and recommendation to which specific objection is made.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also Mathews v. Weber*, 423 U.S. 261, 270-71 (1976) (interpreting § 636(b), recognizing a magistrate judge makes only a recommendation to the district judge—who "is free to follow it or wholly to ignore it or, if he is not satisfied, he may conduct the review in whole or in part anew"—and emphasizing "[t]he authority and the responsibility to make an informed, final determination . . . remains with the [district] judge").

[7]    Plaintiff asserted the following causes of action in her amended complaint: (1) an abuse of process claim against SLED, (2) a civil conspiracy claim against SLED, (3) § 1983 claims against Follin, (4) a gross negligence claim against SLED based on its alleged negligent supervision of Follin, and (5) a § 1983 supervisory liability claim against SLED.  ECF No. 50 at ¶¶ 28-50.

III.    **Plaintiff's Subpoena Duces Tecum to SCAG**

According to the December 11, 2014 electronic docket entry for this case, the Magistrate Judge's chambers received an email from Plaintiff's counsel detailing a discovery issue. ECF No. 67. According to the email, Plaintiff's attorney had served a subpoena duces tecum on SCAG, and SCAG had filed written objections to the subpoena refusing to produce the requested documents. *Id.* The Magistrate Judge entered a docket text order finding SCAG had properly objected to the subpoena pursuant to Federal Rule of Civil Procedure 45(d)(2)(B) and informing Plaintiff that she could now move to compel production pursuant to Rule 45(d)(2)(B)(i). *Id.*

IV.    **Plaintiff's First Motion to Compel**

On December 19, 2014, Plaintiff filed a motion to compel, attaching to it the subpoena duces tecum she had served on SCAG and SCAG's written objections. ECF Nos. 68, 68-1, & 68-2. The subpoena showed Plaintiff sought production of six categories of items from SCAG: (1) "[a] full and complete copy of the employee file of Megan Burchstead"; (2) "[a] full and complete copy of the employee file of Wayne Allen Myrick"; (3) copies of any communications referencing Plaintiff, the criminal charges against her, and the related investigation and prosecution; (4) copies of any requests, suggestions, instructions, or orders given by SCAG employees regarding the investigation and prosecution of Plaintiff; (5) copies of any policies or procedures that SCAG follows when conducting a criminal prosecution or coordinating with a law enforcement agency; and (6) any other files, documents, and digital records pertaining to Plaintiff, her criminal charges, the investigation, and the prosecution. ECF No. 68-1 at 6-7. In sum, Plaintiff demanded production of two types of materials: employee personnel files and SCAG's prosecutorial file from Plaintiff's criminal case.

In its written objections, SCAG refused to comply with the subpoena duces tecum, asserting the

5

subpoena was overbroad and the requested items were privileged.  ECF 68-2 at 2-3.  The motion to compel was automatically referred to the Magistrate Judge.  ECF No. 68.

After holding an informal telephone conference, a status conference, and a formal hearing, the Magistrate Judge issued an order on March 23, 2015, granting in part and denying in part the motion to compel.  ECF Nos. 68, 77, 78, & 90.  The March 23 order contained the following rulings: (a) regarding Plaintiff's request for Burchstead's and Myrick's employee files, the Magistrate Judge denied the request without prejudice, granted Plaintiff leave to file an amended subpoena with more narrowly tailored requests, and instructed SCAG—upon receiving the amended subpoena—to either produce the requested items in their entirety or provide a privilege log for any withheld documents pursuant to Federal Rule of Civil Procedure 45(e)(2); (b) regarding Plaintiff's request for any communications and investigative files, the Magistrate Judge—finding that this request was reasonably tailored, not overbroad, and relevant to Plaintiff's claim and that SCAG's invocation of the law enforcement privilege was qualified and not absolute—instructed SCAG to submit objections based on the law enforcement privilege in a manner consistent with the approach outlined in *King v. Conde*,[8] to provide a privilege log for any documents claimed to be protected by the attorney-client or work-product privileges, and to provide all other responsive documents pursuant to Rule 45(e); and (c) regarding Washington's request for any SCAG handbooks or procedure manuals, the Magistrate Judge directed SCAG to provide Plaintiff with a table of contents to SCAG's "office-wide handbook" but denied Plaintiff's request for SCAG's "state grand jury manual."  ECF No. 90 at 4-8.

In accordance with the Magistrate Judge's order, Plaintiff's attorney served an amended

---

[8]     121 F.R.D. 180, 198 (E.D.N.Y. 1988) (providing a ten-factor balancing test for courts to use when determining whether a party is entitled to the production of documents that another party claims are privileged), *cited with approval in Martin v. Conner*, 287 F.R.D. 348, 350-57 (D. Md. 2012).

subpoena duces tecum on SCAG renewing the request for Myrick's and Burchstead's employee files but narrowing the scope of the subpoena to their performance evaluations. ECF No. 93-1. The amended subpoena stated:

> Plaintiff is seeking all employee/personnel records for Megan Burchstead and Wayne Allen Myrick that she would be entitled to under the South Carolina Freedom of Information Act and Burton v. York County Sheriff's Department, 358 S.C. 339, 594 S.E.2d 888 (Ct. App. 2004). Specifically, Plaintiff is requesting any and all documents which document the job performances of Ms. Burchstead and Mr. Myrick in their job duties as employees of the Attorney General's Office of South Carolina. This request would encompass any disciplinary records, complaints or other documents memorializing Burch[stead's] and Myrick's performances as public employees, as well as the Attorney General's Office responses to the performance of their duties. Pursuant to City of Columbia v. ACLU, 323 S.C. 384, 475 S.E.2d 747 (1976), if the agency from which the information is sought claims exemption, the agency must separate the non-exempt material and disclose said non-exempt material. Pursuant to court order in this matter (ECF #90), the Attorney General's Office is "instructed to either produce the requested documents in their entirety or provide a privilege log for any documents withheld as required by Rule 45(e)(2)."

ECF No. 93-1 at 6.

## V.    SCAG's Privilege Log

SCAG responded to the amended subpoena by providing a privilege log and a production list. ECF Nos. 93-2 & 93-3. Within its privilege log, SCAG claimed it was withholding information that Plaintiff had demanded in her original and amended subpoenas duces tecum. ECF No. 93-2. SCAG refused to produce Myrick's and Burchstead's performance evaluations on the grounds that disclosure would result in an unreasonable invasion of personal privacy and that the evaluations were irrelevant to Plaintiff's conspiracy claim because they contained no evidence of misconduct by Myrick or Burchstead. ECF No. 93-2 at 2-4; ECF No. 97 at 1-2. As for many other documents that were

contained in its prosecutorial file, SCAG opposed production on the basis of the work-product and attorney-client privileges.[9]  ECF No. 93-2 at 4-16; ECF No. 97 at 2-9.

## VI.  Plaintiff's Second Motion to Compel

On June 8, 2015, Plaintiff filed a second motion to compel in which she stated the motion was necessary because "the bulk of issues with the subpoena responses remain."  ECF No. 93 at 4.  The motion to compel was automatically referred to the Magistrate Judge, who entered an order instructing SCAG to submit copies of all documents for which it was claiming a privilege so that she could review them in camera.[10]  ECF Nos. 93 & 102.  SCAG emailed the documents in electronic PDF format to the Magistrate Judge's chambers.  ECF No. 110 at 4; ECF Nos. 122-25.  After reviewing the documents in camera, the Magistrate Judge issued an order on September 10, 2015, granting in part and denying in part Plaintiff's second motion to compel.  ECF No. 110.

Plaintiff filed timely objections to the Magistrate Judge's order, and the Attorney General filed a reply.  *See* ECF Nos. 115 & 120.  The matter came before the Court for consideration pursuant to Federal Rule of Civil Procedure 72(a).

## VII.  The In Camera Documents

The in camera documents consist of the two types of materials for which Plaintiff demands production: (1) employee job performance evaluations from Myrick's and Burchstead's employee files and (2) content from SCAG's prosecutorial file relating to Plaintiff's criminal case.  These materials

---

[9]      In its privilege log, SCAG stated, "The Attorney General **asserts attorney client, work product and other privileges, but not law enforcement privilege**, against the disclosure of the documents listed below which may be sought pursuant to the original subpoena in this case and the amended subpoena as to personnel files."  ECF No. 93-2 at 2 (emphasis added).

[10]      SCAG did not provide items listed in the privilege log that were unresponsive to the subpoenas, as explained in its August 24, 2015 letter to the Magistrate Judge.  *See* ECF No. 108.

8

are identified as they appear in SCAG's privilege log, as explained in the next paragraph.

SCAG's privilege log identifies the six categories of materials demanded in Plaintiff's subpoenas; the first and second categories encompass Myrick's and Burchstead's employee job performance evaluations, and the third, fourth, and sixth categories contain content from SCAG's prosecutorial file relating to Plaintiff's case.[11]  *See* ECF No. 93-2.  In particular, the privilege log combines the third and fourth categories with the sixth category (those materials from SCAG's prosecutorial file pertaining to Plaintiff, her criminal charges, the investigation, and the prosecution) and divides the sixth category into thirty subcategories, enumerating them as "6A, 6B, 6C," and so on, reaching a final category of "6DD."  *See id.* at 4-16.  Categories 6F, 6G, 6H, 6I, 6J, 6K, 6L, 6M, 6N, 6O, 6P, 6R, 6T, 6V, 6W, 6X, 6Z, 6BB, 6CC, and 6DD—as well as Disclosure 4[12]—were produced for in camera review and are discussed below.[13]

Upon beginning its review of Plaintiff's objections, the Court became aware that the documents submitted by SCAG for in camera review were not properly filed under seal.  Accordingly, the Court instructed the Magistrate Judge to forward the documents (via email) to the Clerk of Court with the direction that they be placed under seal.  The sealed in camera documents are now part of the electronic docket in this case, as reflected by docket entries 122, 123, 124, and 125, and access to them is properly

---

[11]    The fifth category described in Plaintiff's original subpoena (SCAG handbooks, policy and procedure manuals, and/or personnel manuals) was addressed in the Magistrate Judge's March 23, 2015 order ruling on Plaintiff's first motion to compel.  *See* ECF No. 90.  The in camera materials do not contain materials from the fifth category.

[12]    Disclosure 4 is a February 22, 2012 email that SCAG provided Plaintiff; however, SCAG redacted two words in this email, so Plaintiff sought production of the unredacted email.  *See* ECF Nos. 97 at 8 & 97-1 at 3 (SCAG's response in opposition to Plaintiff's second motion to compel and attached correspondence).

[13]    SCAG did not provide the items listed on the privilege log that are not the subject of Plaintiff's motion to compel (i.e., Categories 6A, 6B, 6C, 6D, 6E, 6Q, 6S, 6U, 6Y, and 6AA).

restricted to the Court only.[14]  Docket entry 122 contains Myrick's and Burchstead's employee job

performance evaluations; entries 123, 124, and 125 contain the materials from SCAG's prosecutorial

file.  For the sake of clarity, when referencing the in camera documents, the Court cites to both (1) the

page numbers on the electronic docket entries (e.g. "ECF No. 122-1 at 6") and, where available, (2) the

bates numbers[15] on the documents themselves (e.g. "Category 6P at 14").

<u>**Legal Standards**</u>

## I.    Review of the Magistrate Judge's Order

Rule 72(a) of the Federal Rules of Civil Procedure allows a magistrate judge to hear and issue

orders on nondispositive pretrial matters.  Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A).[16]  A

motion to compel qualifies as a nondispositive pretrial matter.  *Cheatham v. Ford Motor Co.*, 64 F.3d

656, 1995 WL 478021, at *5 (4th Cir. 1995) (unpublished table decision); *Burnside v. Kinlaw*, No.

8:00-1175-20AK, 2001 WL 34684732, at *1 (D.S.C. Feb. 16, 2001), *aff'd*, 21 F. App'x 169 (4th Cir.

2001).  Upon receiving a timely objection to a magistrate judge's order on a nondispositive pretrial

matter, a district court must review the magistrate judge's order pursuant to the "clearly erroneous" or

"contrary to law" standard of review set forth in 28 U.S.C. § 636(b)(1)(A) and Rule 72(a).  *Everett v.*

---

[14]    Docket entries 122, 123, 124, and 125 are "court only" entries and cannot be seen or accessed by the public.

[15]    Myrick's and Burchstead's performance evaluations do not contain bates numbers or any other page numbering, so the Court cites only to the ECF entries (i.e., ECF No. 122-1 (Myrick's evaluations) and ECF No. 122-2 (Burchstead's evaluations)).

[16]    Rule 72(a) implements section 636(b)(1)(A) and provides,

> A party may serve and file objections to the [magistrate judge's] order within 14 days after being served with a copy.  A party may not assign as error a defect in the order not timely objected to.  The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a).

10

*Prison Health Servs.*, 412 F. App'x 604, 605 n.2 (4th Cir. 2011). Thus, the Court may not modify or set aside the Magistrate Judge's ruling on a nondispositive matter, such as a motion to compel, unless it "is 'clearly erroneous or contrary to law.'" *Reddick v. White*, 456 F. App'x 191, 192 (4th Cir. 2011) (quoting 28 U.S.C. § 636(b)(1)(A)).

A ruling "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 379 (4th Cir. 1995). "[A]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Guarantee Co. of N. Am. U.S.A. v. Metro Contracting, Inc.*, No. 2:13-CV-02266-PMD, 2015 WL 402909, at *3 (D.S.C. Jan. 28, 2015) (alteration in original). A magistrate judge has broad discretion in resolving nondispositive discovery disputes, and a district court should not overrule the magistrate judge's determination absent an abuse of discretion. *Weber v. Jones*, No. CA 8:12-3349-TMC, 2014 WL 1094418, at *1 (D.S.C. Mar. 18, 2014). "'[A]lthough an abuse-of-discretion attitude should apply to many discovery and related matters, it need not curtail the power of the district judge to make needed modifications in the magistrate judge's directives.'" *E.E.O.C. v. BMW Mfg. Co., LLC*, No. CA 7:13-1583-HMH, 2015 WL 5449086, at *1 (D.S.C. July 30, 2015) (alteration in original) (quoting 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, § 3069 (2d ed. 2014)).

## II.    Discovery and Motions to Compel

### A.    Scope of Discovery

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003).

11

Federal district courts are vested with broad discretion in resolving discovery disputes and deciding whether to grant or deny a motion to compel. *Erdmann v. Preferred Research, Inc. of Ga.*, 852 F.2d 788, 792 (4th Cir. 1988). Federal Rule of Civil Procedure 26 governs discovery and formerly provided—at the time Plaintiff served the subpoenas duces tecum and filed the motions to compel, and when the Magistrate Judge issued the discovery order at issue—the following:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.[17]

Fed. R. Civ. P. 26(b)(1). Relevant information is a broader concept than admissible evidence. To be relevant, information need only be calculated to lead to the discovery of admissible evidence; it need not be admissible itself. "Relevant evidence" is defined to mean evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. A district court has broad discretion in ruling on relevancy matters implicating Rule 26. *Watson v. Lowcountry Red Cross*, 974 F.2d 482,

---

[17]    The Court is aware that on December 1, 2015, Rule 26(b)(1) and other Federal Rules of Civil Procedure were amended. Most notably, Rule 26(b)(1) no longer contains the phrase "reasonably calculated to lead to the discovery of admissible evidence," which has been supplanted by "proportional to the needs of the case." However, because the Court is essentially sitting in an appellate capacity and reviewing the Magistrate Judge's discovery order for clear error, the Court applies the same discovery rules that the Magistrate Judge applied: the pre-December 1, 2015 version of the Federal Rules. *Cf. Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 407 n.6 (4th Cir. 2010) ("We recognize that on December 1, 2009, the Federal Rules of Civil Procedure were amended. As a general rule, the Supreme Court has advised that amendments to the Federal Rules should not apply retroactively. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 n.29 (1994). We therefore apply the pre-December 1, 2009, version of the Federal Rules.").

488-89 (4th Cir. 1992).

**B.    Rule 45 Subpoena Duces Tecum**

Under Federal Rule of Civil Procedure 45, a party to the litigation may serve a subpoena for the production of discoverable material on a non-party to the litigation; in turn, the non-party may contest the subpoena.  The scope of discovery for a nonparty litigant under a subpoena duces tecum issued pursuant to Federal Rule of Civil Procedure 45 is the same as the scope of a discovery request made upon a party to the action under Rule 26. *Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992).  In other words, the scope of discovery allowed under a Rule 45 subpoena is equivalent to the scope of discovery allowed under Rule 26. *HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013).  "[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." *Id.*  "[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken, or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) (internal footnote omitted).

Rule 45 governs demands upon nonparties for the production of persons or materials, and a subpoena issued under this rule may command a nonparty to "produce designated documents, electronically stored information, or tangible things in that person's possession."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  A party or attorney issuing and serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the district court "must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply."  Fed. R. Civ. P. 45(d)(1); *see HDSherer*, 292 F.R.D. at 308 (stating a subpoena imposes an undue burden if it is overbroad).  If a nonparty timely objects to a subpoena, a party may file a motion

13

to compel production of the requested materials. Fed. R. Civ. P. 45(d)(2)(B). Upon the filing of a motion to compel, the district court *may* order the nonparty to comply with the subpoena, though in doing so the court *must* protect a nonparty "from significant expense resulting from compliance." *Id.* A nonparty who seeks to withhold subpoenaed information on the basis that it is privileged must (1) expressly assert the claimed privileged and (2) describe the nature of the withheld information "in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A).

### Discussion

As previously explained, the Magistrate Judge granted in part and denied in part Plaintiff's second motion to compel in the order currently before the Court for review. ECF No. 110 at 9-10. Plaintiff presents three primary arguments in her objections to the Magistrate Judge's order, asserting the Magistrate Judge committed clear error and acted contrary to law in (1) denying production of Myrick's and Burchstead's employee job performance evaluations, (2) denying production of SCAG communications on the basis of the work-product privilege; and (3) denying production of SCAG communications that do not implicate SLED or an agent of SLED. *See* Pl.'s Objs., ECF No. 115 at 6-15. The Court addresses the Magistrate Judge's rulings and Plaintiff's respective objections in turn.

To be clear, the Court has conducted an in camera review of the following twenty-three categories of documents:

- Performance evaluations of Wayne Allen Myrick Jr., *see* ECF No. 122-1;

- Performance evaluations of Megan Wines Burchstead, *see* ECF No. 122-2; and

- SCAG's prosecutorial file, specifically (as identified by SCAG's privilege log) Categories 6F, 6G, 6H, 6I, 6J, 6K, 6L, 6M, 6N, 6O, 6P, 6R, 6T, 6V, 6W, 6X, 6Z, 6BB,

14

6CC, and 6DD—as well as Disclosure 4—*see* ECF Nos. 123, 124, and 125.

## I.    Employee Files: Myrick's and Burchstead's Performance Evaluations

The Magistrate Judge ruled Plaintiff was not entitled to the "requested employee files" of Myrick and Burchstead because "[t]hese documents do not reference or mention any remaining Defendant and are not reasonably calculated to lead to the discovery of admissible evidence within the scope of Rule 26(b)(1)." ECF No. 110 at 4.  The Magistrate Judge found that although Plaintiff's claim of an alleged civil conspiracy between SCAG and SLED had survived as a cause of action,[18] SCAG was no longer a party to the lawsuit and therefore "employee reviews [of SCAG personnel] that do not at all touch or concern SLED or an agent of SLED are not relevant to Plaintiff's conspiracy claim." *Id.* at 5.  Plaintiff argues the Magistrate Judge erred in denying production of Myrick's and Burchstead's employee job performance evaluations, contending the evaluations (1) are reasonably calculated to lead to the discovery of admissible evidence and (2) are basic information that the public at large is entitled to under the South Carolina Freedom of Information Act,[19] as recognized by the South Carolina Court of Appeals in *Burton v. York Cty. Sheriff's Dep't*, 358 S.C. 339, 594 S.E.2d 888 (Ct. App. 2004).  Pl.'s Objs. at 6-10.

"Personnel files are discoverable only in limited circumstances given that personal privacy and accurate, employee evaluations are important public policy concerns." *U.S. E.E.O.C. v. McCormick & Schmick's Seafood Restaurants*, No. CIV.A. DKC-11-2695, 2012 WL 3563877, at *4 (D. Md. Aug. 16, 2012) (internal quotation marks and citation omitted).  "In an unpublished decision, the Fourth

---

[18]    More precisely stated, Plaintiff's civil conspiracy claim—brought against Defendant SLED—alleges that SLED conspired with SCAG, Burchstead, Myrick, Wilson, and Follin to cause special damage to Plaintiff.  *See* Am. Compl. at ¶ 34.

[19]    S.C. Code Ann. §§ 30-4-10 to -165 (2007 & Supp. 2015).

15

Circuit indicated that personnel files are discoverable *if they contain information relevant to the subject matter of a case and the need for the information outweighs the fileholders' privacy interests.* Thereafter, district courts in the Fourth Circuit have applied this rule." *Id.* (emphasis added) (citing *Kirkpatrick v. Raleigh Cty. Bd. of Educ.*, 78 F.3d 579, 1996 WL 85122, at *2 (4th Cir. 1996) (unpublished table decision)).

Having thoroughly reviewed Myrick's and Burchstead's performance evaluations, the Court finds the Magistrate Judge erred in not compelling production of certain portions of pages in these materials. The Magistrate Judge found "the requested employee files . . . do not reference or mention any remaining Defendant." ECF No. 110 at 4. This finding is clearly erroneous. Myrick's performance evaluations list his "Job Duties" that entail representation of SLED. ECF No. 122-1 at 6, 15. Burchstead's performance evaluations similarly indicate her job duties require her to advise and assist "law enforcement." ECF No. 122-2 at 4, 23. Contrary to the Magistrate Judge's ruling, these particular pages clearly reference and mention representation of SLED or law enforcement. Thus, these pages are relevant.[20] Moreover, Plaintiff's need for this information outweighs any privacy interest Myrick and Burchstead may have in the portion of their performance evaluations describing their job duties to work with state law enforcement. *See McCormick*, 2012 WL 3563877, at *4. The Court will therefore order production of a redacted portion of the documents as explained below; some of the documents ordered produced are simply cover pages or instruction pages, which will provide Plaintiff the appropriate context in which to understand the documents.

**The Court orders SCAG to produce the following documents from Myrick's and**

---

[20]    Plaintiff was arrested in November 2011, and SCAG notified her in December 2013 that it would be dismissing the charges. Am. Compl. at ¶¶ 6, 25. It appears that the particular pages described above fall within this time frame.

**Burchstead's employee job performance evaluation files**; because these files do not contain bates numbering or any page numbers at all, the Court cites the pages from the electronic PDF files that SCAG originally emailed the Magistrate Judge:

- **From Myrick's file:**

  (1)   Page 1: "Evaluation From June 17, 2012 To December 17, 2012"
  (2)   Pages 3-4: "Instructions"
  (3)   Page 5: "Three Levels of Performance"
  (3)   Page 6: "Job Duties"; specifically the portion of this page containing "3. Job Duty"[21]
  (4)   Page 13: Email from Tammie Wilson to John W. McIntosh regarding Myrick's performance for the period of June 2011 to June 2012
  (5)   Page 14: "Three Levels of Performance"
  (6)   Page 15: "Job Duties"; specifically the portion of this page containing "C. Job Duty"[22]

  *See* ECF No. 122-1 at 1, 3-6, 13-15.

- **From Burchstead's file:**

  (1)   Page 10: "Performance Review From January 17, 2013 To January 17, 2014"
  (2)   Page 11: "Instructions"
  (3)   Page 12: "Three Levels of Performance"
  (4)   Page 13: "Job Duties"; specifically the portion of this page containing "1. Job Duty"[23]
  (5)   Page 19: "Evaluation From January 17, 2012 To January 17, 2013"
  (6)   Page 21: "Instructions"
  (7)   Page 22: "Three Levels of Performance"
  (8)   Page 23: "Job Duties"; specifically the portion of this page containing "1. Job Duty"[24]

---

[21]      SCAG may redact the content in numbers "1. Job Duty" and "2. Job Duty" on page 6 because the content is irrelevant to the subject matter of this case.

[22]      SCAG may redact the content in items "A. Job Duty" and "B. Job Duty" on page 15 because the content is irrelevant to the subject matter of this case.

[23]      SCAG may redact the content in numbers "2. Job Duty" and "3. Job Duty" on page 13 because the content is irrelevant to the subject matter of this case.

[24]      SCAG may redact the content in numbers "2. Job Duty" and "3. Job Duty" on page 23 because the content is irrelevant to the subject matter of this case.

17

*See* ECF No. 122-2 at 10-13, 19, 21-23. Regarding these documents, the Court notes they merely show the extent of Myrick's and Burchstead's job duties concerning their representation of SLED or law enforcement and their performance of such.

However, regarding all other documents in Myrick's and Burchstead's performance evaluations, the Court agrees with the Magistrate Judge that Plaintiff cannot compel production of these documents. The Court has thoroughly reviewed these materials in camera and determined none of the remaining content in the performance evaluations is relevant or likely to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1).[25]

As for Plaintiff's argument that she is entitled to the performance evaluations under the South Carolina Freedom of Information Act ("FOIA"), the Court quickly disposes of this argument. FOIA regulates the disclosure of state records for public review, not the discoverability of materials sought during litigation in federal court. Moreover, as the Attorney General explains in his reply to Plaintiff's objections, *see* ECF No. 120 at 3, the evaluations contain no evidence of disciplinary misconduct and therefore are not relevant to the subject matter of the case. *See McCormick*, 2012 WL 3563877, at *4. Thus, it was neither clearly erroneous nor contrary to law for the Magistrate Judge to not compel production of the performance evaluations based on FOIA and *Burton*.

To summarize, the Court **MODIFIES** the Magistrate Judge's ruling denying production of all documents in Myrick's and Burchstead's employee job performance evaluations and **ORDERS** SCAG to produce the documents listed above.

## II.    Work-Product Privilege: SCAG's Prosecutorial File

Plaintiff sought to compel the production of all items contained in SCAG's prosecutorial file

---

[25]        The Court reiterates it is applying the same version of Rule 26(b)(1) that the Magistrate Judge applied.

from the criminal case brought against her. *See* ECF No. 68-1. SCAG refused to produce many materials on the ground that the work-product privilege still applied to and protected the prosecutorial file despite conclusion of the criminal case. *See* ECF Nos. 68-2, 93-2, & 93-3.

## A. Applicable Law

The work-product privilege, also known as the work-product doctrine, protects an attorney's work done in anticipation of litigation. *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011). It is rooted on the principle that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Work product comprises two categories: (1) fact work product and (2) opinion work product. *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997). Fact work product encompasses purely factual information and consists of materials prepared by an attorney that do not contain the fruit of his mental processes, whereas opinion work product contains an attorney's mental impressions, conclusions, opinions, or legal theories. *In re Grand Jury Proceedings #5*, 401 F.3d 247, 250 (4th Cir. 2005). Fact work product is entitled to qualified immunity and "is discoverable upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Allen*, 106 F.3d at 607 (internal quotation marks omitted). Opinion work product, however, "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id.*

Federal Rule of Civil Procedure 26(b)(3) codifies the work-product doctrine and provides in pertinent part:

> **(3)    Trial Preparation: Materials.**
>
> (A)    *Documents and Tangible Things*. Ordinarily, a party

> may not discover documents and tangible things that
> are prepared in anticipation of litigation or for trial by
> or for another party or its representative (including the
> other party's attorney, consultant, surety, indemnitor,
> insurer, or agent). But, subject to Rule 26(b)(4), those
> materials may be discovered if:
>
> (i)    they are otherwise discoverable under Rule
>        26(b)(1); and
>
> (ii)   the party shows that it has substantial need for
>        the materials to prepare its case and cannot,
>        without undue hardship, obtain their
>        substantial equivalent by other means.
>
> (B)    *Protection Against Disclosure.* If the court orders
>        discovery of those materials, it must protect against
>        disclosure of the mental impressions, conclusions,
>        opinions, or legal theories of a party's attorney or
>        other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3). "Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys to their own work product, the attorney, as well as the client, hold the privilege." *In re Grand Jury Proceedings #5*, 401 F.3d at 250. The party invoking the protection of the work-product privilege bears the burden of demonstrating its applicability. *Solis*, 644 F.3d at 232.

### B.    The Magistrate Judge's Rulings & Plaintiff's Objections

The Magistrate Judge denied Plaintiff's second motion to compel in part based upon the finding that some documents contained in SCAG's prosecutorial file were protected by the work-product privilege and thus were not subject to discovery. ECF No. 110 at 4-9. Conversely, the Magistrate Judge granted Plaintiff's motion to compel in part based upon the finding that other documents in the prosecutorial file were not covered by the work-product privilege and thus were subject to discovery

by Plaintiff.[26]  *Id.* at 6-9.  Obviously, Plaintiff's objections concern those documents for which the Magistrate Judge denied production.  *See* Pl.'s Objs. at 10-14.

The Magistrate Judge ruled the work-product privilege protected the following materials from disclosure: (1) a June 12, 2014 email from Burchstead to "Help Desk" contained in Category 6F; (2) all email correspondence between Burchstead and Follin in Category 6M and Disclosure 4; and (3) any documents or portions[27] of documents in Category 6P from which mental impressions could be gleaned.[28]  ECF No. 110 at 6-10.  In denying disclosure of these materials, the Magistrate Judge found they contained mental impressions protected under Federal Rule of Civil Procedure 26(b)(3)(B), and she relied on the Fourth Circuit's decision in *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 484 (4th Cir. 1973) ("*Duplan I*"), for the proposition that documents protected by the work-product privilege in one proceeding do not lose their protection in subsequent litigation.[29]  ECF No. 110 at 7.

Plaintiff objects to the Magistrate Judge's findings, arguing the Magistrate Judge ignored the

---

[26]    As discussed earlier in this Order, SCAG objected to production on the basis of not only the work-product privilege but also the attorney-client privilege.  *See* ECF No. 93-2 at 4-16; ECF No. 97 at 2-9.  The Magistrate Judge did not address the merits of SCAG's invocation of the attorney-client privilege, instead noting, "The Fourth Circuit has not expressly ruled on whether the attorney-client privilege exists in this case [i.e., in a situation where Plaintiff asserts "the client is the people of the State, and as one of those people/clients, she can waive the attorney-client privilege"] and whether the privilege has been waived in this instance.  Therefore, the Court will address the merits of the work-product doctrine only."  ECF No. 110 at 6.  Neither Plaintiff nor the Attorney General nor Defendants objected to the Magistrate Judge's decision not to rule on the merits of the attorney-client privilege.

[27]    Because the Magistrate Judge ordered SCAG to produce some documents that contain mental impressions and handwritten notes, the Magistrate Judge directed SCAG to redact such content before producing the documents.  ECF No. 110 at 9-10.

[28]    The Magistrate Judge only specifically addressed Categories 6F, 6M, Disclosure 4, and Category 6P; she did not specifically address Categories 6G, 6H, 6I, 6J, 6K, 6L, 6N, 6O, 6R, 6T, 6V, 6W, 6X, 6Z, 6BB, 6CC, and 6DD.  *See* ECF No. 110 at 6-9.  The Court will specifically address all categories in this Order.

[29]    Regarding Categories 6M and 6P and Disclosure 4, the Magistrate Judge ruled these documents "can be obtained from an existing Defendant, a more convenient source."  ECF No. 110 at 8-9.  Neither Plaintiff nor the Attorney General nor Defendants objected to this ruling.

21

reality that in rare cases, the mental impressions of alleged coconspirators—here, the SCAG

Defendants—are relevant and discoverable, as demonstrated by the reasoning in *Doubleday v. Ruh*, 149

F.R.D. 601 (E.D. Cal. 1993). Pl.'s Objs. at 10-14. Plaintiff asserts her case "is such a rarity" warranting

a compelling need for production of documents containing mental impressions of the SCAG attorneys

(namely, Burchstead) who pursued the criminal prosecution of Plaintiff. *Id.* at 10, 14.

**C.    Analysis**

To appropriately and logically address Plaintiff's objection, the Court divides its analysis into

two steps. The Court must first determine as a threshold matter whether the materials that Plaintiff

seeks contain mental impressions; and if so, the Court must next decide whether such mental

impressions—i.e., opinion work product—are subject to discovery. As explained below, production

of opinion work product requires the existence of a very rare and extraordinary circumstance; no such

circumstance exists in this case.

**1.    Mental Impressions in the Materials**

The Magistrate Judge, as noted above, determined the following categories of materials

contained mental impressions: (1) Burchstead's June 12, 2014 email in Category 6F;[30] (2) Burchstead

and Follin's email correspondence contained in Category 6M[31] and Disclosure 4;[32] and (3) various

materials in Category 6P.[33] ECF No. 110 at 6-10. Having conducted an independent in camera review

of these items, the Court agrees with the Magistrate Judge's determination. The documents contain "the

---

[30]    ECF No. 123-1 at 110-12, 114, 116, 118, 121, 123, 125, 127, 129, 132; *see* Category 6M at 110-12, 114, 116, 118, 121, 123, 125, 127, 129, 132.

[31]    ECF No. 123-8 at 1-27; *see* Category 6M at 1-27.

[32]    ECF No. 125-11 at 1-3; *see* Disclosure 4 at 1-3.

[33]    ECF No. 124-3 at 1-91; *see* Category 6P at 1-91.

mental impressions, conclusions, opinions, or legal theories of" SCAG's attorneys (primarily Burchstead) concerning the criminal prosecution of Plaintiff. Fed. R. Civ. P. 26(b)(3)(B); *see generally Republican Party of N. Carolina v. Martin*, 136 F.R.D. 421, 429 (E.D.N.C. 1991) ("The writing of an attorney is a 'mental impression' of that attorney. An attorney's legal 'impressions' and 'theories' include his tactics, strategy, opinions, and thoughts. Opinion work product doctrine material also includes materials reflecting an attorney's legal strategy, intended lines of proof, and evaluation of the strengths and weaknesses of his case." (internal citations omitted)). Both the Magistrate Judge and the Court "must protect against disclosure of" such opinion work product under Federal Rule of Civil Procedure 26(b)(3)(B). Accordingly, the Court finds it was neither clearly erroneous nor contrary to law for the Magistrate Judge to rule that the categories of materials in question (Category 6F, Category 6M and Disclosure 4, and Category 6P) contained mental impressions. The next inquiry is whether this opinion work product is immune from discovery.

### 2.     Immunity of Opinion Work Product

#### a.     Fact Work Product Versus Opinion Work Product

In finding the work-product privilege protected from discovery those categories of materials containing the mental impressions of SCAG's attorneys, the Magistrate Judge relied on the Fourth Circuit's opinion in *Duplan Corporation v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480 (4th Cir. 1973) ("*Duplan I*"). The Fourth Circuit in *Duplan I* held *fact* work product materials retain their qualified immunity from discovery after termination of the litigation for which the materials were prepared, and that the *qualified immunity* remains in subsequent and unrelated litigation. 487 F.2d at 484. As previously mentioned, fact work product may be compelled in discovery "upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate

23

means without undue hardship." *Allen*, 106 F.3d at 607; *see also* Fed. R. Civ. P. 26(b)(3)(A).

The materials at issue here, however, are **NOT** *fact* work product. They are instead *opinion* work product because, as the Court explained above, they contain mental impressions of SCAG's attorneys. *See In re Grand Jury Proceedings #5*, 401 F.3d at 250 (recognizing opinion work product consists of an attorney's mental impressions, conclusions, opinions, or legal theories). As opinion work product, the materials are afforded much greater protection than fact work product, given that "*opinion* work product enjoys a *nearly absolute immunity* and can be discovered only in very rare and extraordinary circumstances." *Allen*, 106 F.3d at 607 (second emphasis added) (internal quotation marks omitted). *Duplan I*, which deals with fact work product, was not the accurate basis on which to deny the materials. Although the Magistrate Judge was correct to deny the production of opinion work product, her reliance on *Duplan I* was erroneous. Rather, as discussed below, *Duplan **II*** controls the analysis and is the correct authority on which to deny production of opinion work product.

A year after *Duplan I*, the Fourth Circuit issued its opinion in a related appeal, *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730 (4th Cir. 1974) ("*Duplan II*"). The court in *Duplan II* addressed "the question whether an attorney's opinion work product material developed in prior terminated litigation may properly become the subject of discovery in connection with subsequent litigation." *Id.* at 731. The Fourth Circuit, differentiating *Duplan II* from *Duplan I*, held "opinion work product material, as distinguished from material not containing mental impressions, conclusions, opinions, or legal theories, is immune from discovery although the litigation in which it was developed has been terminated." *Id.* at 732-33. In more recent decisions, the Fourth Circuit has reiterated that while fact work product receives qualified immunity, opinion work product warrants nearly absolute immunity. *See, e.g.*, *Allen*, 106 F.3d at 607; *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir.

24

1988) ("[W]e recognize that the line between opinion and non-opinion work product can be a fine one. But what should not be ordered to be disclosed are pure expressions of legal theory or mental impressions." (internal footnote omitted)); *In re Doe*, 662 F.2d 1073, 1079 (4th Cir. 1981) ("[W]hile the protection of opinion work product is not absolute, only extraordinary circumstances requiring disclosure permit piercing the work product doctrine. We acknowledge that the opinion work product rule should be jealously guarded . . . ."). Considering *Duplan I* (which deals with fact work product) and *Duplan II* (which deals with opinion work product), the Court modifies the Magistrate Judge's order to reflect that *Duplan II*—not *Duplan I*—is the proper basis on which to find the SCAG prosecutors' opinion work product remains immune from discovery despite the termination of Plaintiff's criminal prosecution, and on which to deny production of those portions of SCAG's prosecutorial file containing the mental impressions of its attorneys.

### b. Availability of the Work-Product Privilege in Plaintiff's Case

Throughout the course of litigating the second motion to compel, Plaintiff has relied heavily on the case of *Doubleday v. Ruh*, 149 F.R.D. 601 (E.D. Cal. 1993), to support her argument that the work-product privilege does not apply in a civil case where the plaintiff seeks to obtain production of the prosecutorial file from her terminated criminal case. Pl.'s Objs. at 11-14; ECF No. 93 at 11-30; ECF No. 101 at 2. She contends *Doubleday*—not *Duplan I*[34]—is the case on point because *Doubleday* involved facts, allegations, and causes of action similar to those in her case.[35] Pl.'s Objs. at 11-14.

---

[34]    Plaintiff does not cite or otherwise account for *Duplan II* (and neither do the Magistrate Judge or SCAG).

[35]    In *Doubleday*, a county district attorney's office prosecuted the plaintiff on assault and battery charges, but the plaintiff was acquitted. 149 F.R.D. at 604. The plaintiff filed a § 1983 lawsuit (including state claims) against the county and the police officers who arrested her, asserting the defendants conspired to use excessive force in arresting her and conspired to coerce the district attorney's office to prosecute her. *Id.* The plaintiff, seeking to obtain the complete prosecutorial file from her criminal case, issued subpoenas duces tecum to three deputy district attorneys and the custodian of records for the district attorney's office, all of whom were nonparties. *Id.* The

The Court points out *Duplan II* and *Doubleday* represent two conflicting interpretations of the applicability of the work-product privilege in subsequent litigation. *Duplan II*, which is binding on this Court, holds "that the immunity extended to attorneys' mental impressions, conclusions, opinions, or legal theories by . . . F.R.C.P. 26(b)(3) does not expire once the litigation for which they are prepared has been concluded." 509 F.2d at 736. *Doubleday*, in contrast, is nonbinding authority and represents the view that Rule 26(b)(3) affords no work-product protection for a prosecutor's files from a criminal prosecution when the prosecutor is not a party to the subsequent civil litigation. 149 F.R.D. at 605-08.

Although *Doubleday* does involve facts and allegations similar to those in Plaintiff's case—a civil rights lawsuit resulting from an allegedly vindictive criminal prosecution—the Court cannot disregard the controlling precedent in the Fourth Circuit for assessing the discoverability of materials containing mental impressions.[36]  *See Duplan II*, 509 F.2d at 736; *Allen*, 106 F.3d at 607; *In re Doe*, 662 F.2d at 1080.  Such precedent forbids the Court from ordering the production of opinion work product absent the presence of "very rare and extraordinary circumstances." *Allen*, 106 F.3d at 607.  The Fourth Circuit found such an extraordinary circumstance existed in *In re Doe*, a case that Plaintiff cites, by

---

defendants moved to quash production of the prosecutorial file, arguing the file was protected by, among other things, the work-product privilege.  *Id.*

The magistrate judge in *Doubleday* made two significant rulings that Plaintiff cites in support of her second motion to compel.  *Compare id.* at 605-08, *with* Pl.'s Objs. at 11-14.  First, the magistrate judge rejected both the county's (a party) and the district attorneys' (nonparties) reliance on the work-product privilege: "the [c]ounty cannot assert the work product immunity because the work product was never prepared for it; the deputy district attorneys cannot assert the immunity because they are not parties to the present litigation, nor are they 'representative of' a party in this litigation for whom the work product was prepared." 149 F.R.D. at 605-07.  Second, the magistrate judge ruled, "So called absolute work product is discoverable where an attorney's mental impressions are at issue and there is a compelling need for the material." *Id.* at 608.

[36]    Neither the Fourth Circuit Court of Appeals nor any district court in the Fourth Circuit has expressly adopted the discovery standard from *Doubleday*, and the Court declines to do so in the first instance.

carving out a crime-fraud exception[37] to the opinion work-product privilege in a situation where an

---

[37]    The two major exceptions to opinion work-product immunity are the "at issue" exception and the crime-fraud exception. *See* Jeff A. Anderson et. al., *The Work Product Doctrine*, 68 CORNELL L. REV. 760, 831 (1983) (providing an excellent discussion of the "at issue" exception and crime-fraud exceptions). "[T]he 'at issue' exception arises when parties assert a claim or defense based on the 'advice of counsel.' The exception also applies when a party alleges that a suit was begun or settlement was made in bad faith." *Id.* at 832 (internal footnote omitted). "[T]he crime-fraud exception . . . provides that when a client or his attorney is involved in a crime or fraud, the wrongdoer may not use work product immunity to avoid discovery." *Id.* at 833.

The Fourth Circuit has recognized the crime-fraud exception, *see, e.g.*, *In re Grand Jury Proceedings*, 102 F.3d 748, 751 (4th Cir. 1996), but not the "at issue" exception. *See* Anderson, *supra*, at 832-33 ("[N]ot all courts accept the 'at issue' exception. In *Duplan Corp. v. Moulinage et Retorderie de Chavanoz* [*Duplan II*], the Fourth Circuit declined to invoke the 'at issue' exception because it 'fails to comport with the policies underlying *Hickman v. Taylor* and Rule 26(b)(3).'" (footnotes omitted) (quoting *Duplan II*, 509 F.2d at 734)); *see also Smith v. Scottsdale Ins. Co.*, 40 F. Supp. 3d 704, 725 (N.D.W. Va. 2014) (rejecting the plaintiffs' assertion "that the implied 'at-issue' exception to the immunity of opinion work-product applies in this case because the opinions of counsel and [d]efendant's adjusters are directly at issue" and observing that "in this Circuit, opinion work product enjoys almost absolute immunity from discovery, and an indirect waiver of is protection will only be found in extreme circumstances"), *aff'd*, No. 5:12CV86, 2014 WL 4199207 (N.D.W. Va. Aug. 22, 2014), *and aff'd*, 621 F. App'x 743 (4th Cir. 2015).

Significantly, in *Duplan II*, the district court applied the "at issue" exception and "ordered production of certain opinion work product materials 'since the mental impressions, opinions, conclusions, and legal theories of the attorney in the prior litigation are now operative facts as to the motive and intent of the parties at the time of the settlement.'" 509 F.2d at 734 n.7 (quoting the district court's order). The district court ordered such production "[b]ecause it was contended here that the 1964 settlement agreements between Leesona Corporation and the patent owner, Chavanoz, *were in fact an antitrust conspiracy*." *Id.* (emphasis added). Furthermore, in light of "the contentions that fraud was practiced on the U.S. Patent Office," the district court ordered production of opinion work product "since 'the mental impressions, opinions, conclusions, and legal theories of the attorneys prosecuting the patent applications for Chavanoz are now operative facts as to the motive and intent of the patent owner in its dealing with the Patent Office.'" *Id.* (quoting the district court's order). On appeal, the Fourth Circuit found the district court's application of the "at issue" exception—which the Fourth Circuit referred to as the "operative fact exception"—was erroneous. *Id.* at 734; *see also* Anderson, *supra*, at 832-33 (discussing the Fourth Circuit's rejection of the "at issue" exception in *Duplan II*). Given the Fourth Circuit's rejection of the "at issue" exception, the Court cannot order production of opinion work product merely because Plaintiff has asserted a civil conspiracy claim.

The United States District Court for the Eastern District of Virginia has noted, "The crime/fraud exception to the attorney-client and work product privileges provides that otherwise privileged communications or work product made for, or in furtherance of, the purpose of committing a crime or fraud will not be privileged or protected." *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 280 (E.D. Va. 2004). In *Rambus*, the court noted "[t]he term 'crime/fraud exception' . . . is a bit of a misnomer, as many courts have applied the exception to situations falling well outside of the definitions of crime or fraud," and the court pointed out "the Fourth Circuit occasionally refers to the crime/fraud exception as the crime/fraud/*tort* exception." *Id.* at 281 (internal quotation marks and citation omitted); *see Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1220, 1221 (4th Cir. 1976) ("*Duplan III*") (discussing the issue of whether there exists a "crime, fraud, or tort exception to Rule 26(b)(3)" but declining to decide the issue); *id.* at 1220 n.5 (citing *Union Camp Corp. v. Lewis*, 385 F.2d 143 (4th Cir. 1967), in which "this court . . . discuss[ed] the ***tort***, fraud, or crime exception to the attorney-client privilege" (emphasis added)).

The Fourth Circuit has explained the party asserting the crime-fraud exception—and presumably the tort exception, as noted in *Rambus*—must make the following showing to obtain otherwise privileged information:

attorney attempted to exploit the privilege to shield himself from a criminal prosecution (for charges

---

> Both the attorney-client and work product privileges may be lost, however, when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud.  The party asserting the crime-fraud exception . . . must make a prima facie showing that the privileged communications fall within the exception.  In satisfying this prima facie standard, proof either by a preponderance or beyond a reasonable doubt of the crime or fraud is not required.  Rather, the proof "must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted."  *Duplan Corp. v. Deering Milliken, Inc.* [*Duplan III*], 540 F.2d 1215, 1220 (4th Cir. 1976).  Further, "[w]hile such a showing may justify a finding in favor of the offering party, it does not necessarily compel such a finding."  *Id.*
>
> Specifically, we have held that the party invoking the crime-fraud exception must make a prima facie showing that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud.  Prong one of this test is satisfied by a prima facie showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed.  Prong two may be satisfied with a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity.
>
> . . . .
>
> Our jurisprudence on the application of the crime-fraud exception to the work product privilege is less well-defined.  We have explicitly held that the crime-fraud exception applies to opinion work product.  *In re Doe*, 662 F.2d at 1079.  We have also found that because the attorney, as well as the client, has the right to assert the opinion work product privilege, a prima facie case of crime or fraud must also be made out against the attorney for the exception to apply.  Thus, while the attorney-client privilege may be vitiated without showing that the attorney knew of the fraud or crime, those seeking to overcome the opinion work product privilege must make a prima facie showing that the attorney in question was aware of or a knowing participant in the criminal conduct.  If the attorney was not aware of the criminal conduct, a court must redact any portions of subpoenaed materials containing opinion work product.

*In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005) (second alteration in original) (some citations and internal quotation marks omitted); *see, e.g.*, *Duplan III*, 540 F.2d at 1221 ("[W]e are of opinion that, assuming that there is a crime, fraud or *tort* exception to Rule 26(b)(3), a matter which we do not decide here, the documents now sought are nevertheless not discoverable since the appellants have failed to make a prima facie showing that the settlement agreement was entered into with intent to violate the antitrust laws." (emphasis added)).

Applying the crime/fraud/tort exception to the instant case, the Court is not satisfied that a sufficient prima facie showing has been made for discovery purposes, such as was made in *In re Doe* (which is discussed in footnote 38).  *See In re Grand Jury Proceedings #5*, 401 F.3d at 252.  As explained below, this case does *not* present a rare and extraordinary circumstance justifying application of the crime/fraud/tort exception.

of criminal conspiracy, obstruction of justice, and subordination of perjury) stemming from his actions

in a prior litigation.[38]  662 F.2d at 1079-80.  Nevertheless, the *Doe* court emphasized the bedrock

principle that opinion work product enjoys nearly absolute immunity and can be discovered only in very

rare and extraordinary circumstances.  *Id.* at 1080.  In Plaintiff's case, there is no authority in the Fourth

Circuit that would support a finding of a rare and extraordinary circumstance entitling her to the opinion

work product of SCAG attorneys; in fact, as explained below, there is authority within the Fourth

Circuit undermining her position.

       Neither the Fourth Circuit Court of Appeals nor this Court has addressed whether a prosecutorial

file from a terminated criminal case is discoverable in a subsequent civil rights lawsuit.  However, the

Court notes the Magistrate Judge's finding—that the work-product privilege bars production of opinion

work product contained in a prosecutorial file—is consistent with another magistrate judge's discovery

ruling in the Fourth Circuit on similar issues.  *See Owens v. Mayor & City Council of Baltimore*, No.

CV 11-3295-GLR, 2015 WL 6082131, at *1 (D. Md. Oct. 14, 2015) (involving a § 1983 plaintiff's

motion to compel production of documents withheld by a state's attorney's office).[39]

       Prosecutors have a legitimate expectation that they can develop legal theories and strategies, as

well as communicate with law enforcement about pending criminal investigations.  Subjecting a

---

[38]       The Court readily distinguishes the facts of *Doe* from those of Plaintiff's case.  In *Doe*, a criminal defendant
informed the United States Attorney that Doe, his former lawyer, had advised him to provide false testimony and to
bribe witnesses.  662 F.2d at 1076.  The United States Attorney commenced a grand jury investigation of Doe and
presented to the grand jury documents (containing both fact and opinion work product) that Doe had prepared while
representing his former client and inadvertently given the client.  *Id.*  Doe moved for the documents to be returned
to him and that the grand jury be dismissed as tainted because it improperly considered documents protected by the
work-product privilege.  *Id.*  The Fourth Circuit found Doe had forfeited any work-product protection, ruling Doe's
"unconditional release" of the documents to his client and his failure to seek to limit future use of the documents
established "that Doe substantially and freely increased the possibility of disclosure to, and use by, anyone the client
desired, including the United States Attorney."  *Id.* at 1081-82.

[39]       The Court recognizes *Owens* was decided after the Magistrate Judge issued the discovery order at issue and
after Plaintiff filed her objections.

29

prosecutor's work product to unbridled discovery in a civil action would inevitably curtail the prosecutor's willingness to memorialize her thoughts and opinions on paper. Such an undesirable effect is precisely the reason why the United States Supreme Court recognizes the applicability of the work-product doctrine in both the civil and criminal contexts:

> Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.

*United States v. Nobles*, 422 U.S. 225, 238 (1975); *see also Hickman*, 329 U.S. at 510-11 ("[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. . . .  Were [the attorney's work product] open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own.  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.  The effect on the legal profession would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served.").

The Court finds SCAG met its burden to show the work-product privilege provides protection for the categories of materials containing opinion work product.  The Magistrate Judge's discovery ruling regarding opinion work product—in Category 6F, Category 6M and Disclosure 4, and Category 6P—was neither clearly erroneous nor contrary to law.  Accordingly, the Court overrules Plaintiff's second objection and affirms the Magistrate Judge's ruling denying production of the documents in SCAG's prosecutorial file that contain the mental impressions of its prosecutors.

III.    **Remaining In Camera Documents**

Plaintiff's final objection concerns the Magistrate Judge's general finding that Plaintiff was not entitled to production of all other categories of materials[40] not specifically addressed in the Magistrate Judge's order.  *See* Pl.'s Objs. at 14-15.  The Magistrate Judge ruled as follows:

> Plaintiff is not entitled to the documents that are not discussed below, including the requested employee files.  These documents do not reference or mention any remaining Defendant and are not reasonably calculated to lead to the discovery of admissible evidence within the scope of Rule 26(b)(1).
>
> . . . .
>
> Though Plaintiff's cause of action for conspiracy between SCAG and SLED has survived as a cause of action, SCAG has long been dismissed as a party to this action.  Therefore, **communication documents or employee reviews that do not at all touch or concern SLED or an agent of SLED are not relevant to Plaintiff's conspiracy claim.  Accordingly, Plaintiff's Motion to Compel with respect to items not discussed below is denied.**

ECF No. 110 at 4, 5-6 (emphasis added).  Based on this general ruling, the Magistrate Judge did not specifically address the seventeen remaining categories of in camera documents, namely Categories 6G, 6H, 6I, 6J, 6K, 6L, 6N, 6O, 6R, 6T, 6V, 6W, 6X, 6Z, 6BB, 6CC, and 6DD.[41]

In her objections, Plaintiff makes the following argument:

> There were many intra-office communications listed in the privilege log which were not addressed in the order.  Respectfully, whether or not those communications discussed SLED or an agent of SLED is not dispositive of whether or not they are relevant or reasonably calculated to lead to the discovery of admissible evidence.  As

---

[40]    These categories are identified in the privilege log, *see* ECF 93-2, and include Categories 6G, 6H, 6I, 6J, 6K, 6L, 6N, 6O, 6R, 6T, 6V, 6W, 6X, 6Z, 6BB, 6CC, and 6DD.  *See* ECF Nos. 123-2, 123-3, 123-4, 123-5, 123-6, 123-7, 124-1, 124-2, 125-2, 125-3, 125-4, 125-5, 125-6, 125-7, 125-8, 125-9, & 125-10.

[41]    As noted above, the Magistrate Judge only specifically addressed Categories 6F, 6M, and 6P and Disclosure 4.  *See* ECF No. 110 at 6-9.

discussed above, if the communications in any way reveal the motivations/mental impressions of SCAG agents in pursuing the prosecution of [Plaintiff], they are discoverable.

Pl.'s Objs. at 14-15.

In addressing Plaintiff's argument, the Court has specifically considered the seventeen remaining categories of in camera documents. Regarding these categories, the Attorney General states in his privilege log that the "attorney client, work product and other privileges, but not law enforcement privilege, [protect] against the disclosure of the documents." ECF No. 93-2 at 2.

### A.    Relevant Categories: 6G, 6J, 6K, 6L, 6N, 6O, 6R, 6V, 6W, 6X, 6Z, 6BB, 6CC, 6DD[42]

---

[42]    Categories 6G, 6J, 6K, 6L, 6N, 6O, 6R, 6V, 6W, 6X, 6Z, 6BB, 6CC, 6DD are described in SCAG's privilege log, *see* ECF No. 93-2, as follows:

- **Category 6G**: "Intra-Office emails dated September 25 and 26 and October 1, 2012 regarding Timmonsville correspondence and various matters pending related to that Town. The string emails are among Bryan Stirling, DAG, Deb Staberg, Executive Assistant and Megan Burchstead with some emails copied to John McIntosh, CDAG, and Mark Powell, Communications Director. To the extent that any of these the [*sic*] emails relate to Washington, they are privileged as work product and attorney client privileged. To the extent that the emails relate to other matters, they are unresponsive and would be barred as attorney work product. Some strings include one email to Stirling from another state agency, refer to unspecified investigation requests received and a media inquiry. In a time before that email, is an email sent to the sender in that agency from another individual referring to apparently unattached Timmonsville correspondence. Nothing in these other agency emails refers to Wilhelmina Washington. Therefore, these email strings are unresponsive."
- **Category 6J**: "Emails on October 2, 2013, from Abee to Mark Powell, OAG Communications Director, re Washington case and an unrelated case. Work product and attorney client privileged and also unresponsive as to other case. Also withheld is a reply by Mark Powell thanking Kinli but not referring to either case by name. Therefore, the email from Powell is unresponsive and irrelevant."
- **Category 6K**: "Email, January 26, 2015 from Smith to Marcie Greene, AAG, Parkin Hunter, AAG with a cc to David Fernandez, AAG, responding to email from Greene requesting forms for motion to quash. Email to Greene, et al, forwards motions in other cases and State v. Washington. Emails are work product protected as to the work of the attorneys. Motions in other cases are unresponsive, and Plaintiff's counsel has the MTQ in State v. Washington. Without waiving this objection, a copy of the Washington MTQ will be provided upon request."
- **Category 6L**: "Email, February 23, 2015, Smith to Jared Libet, AAG, attaching Motions to Quash filed in previous cases including State v. Washington. Emails are work product protected as to the work of the attorneys. Motions in other cases are unresponsive, and Plaintiff's counsel has the MTQ in the instant case. Without waiving this objection, a copy of the Washington MTQ will be provided upon request."
- **Category 6N**: "Handwritten trial prep. notes and trial notes of Megan Burchstead, Kinli Abee and

In her amended complaint, Plaintiff makes the following two allegations:

- "Washington was only indicted on the original charges 'after [she] failed to provide law enforcement with any information on **other** matters in Timmonsville.' That there was 'an ongoing investigation into many matters in Timmonsville' and that Burchstead, Follin, SCAG and SLED were attempting to use the criminal charges against Washington to further that investigation by coercing Washington's assistance through criminal prosecution;"

- "The prosecution against Washington was retaliatory and vindictive, in response to Washington not being able to help the State's ongoing investigation into the 'many matters in Timmonsville,' as well as in retaliation for Washington demanding a jury and speedy trial and effectively presenting a defense against the charges at that first trial. Washington argued that actions and failures to act by both Follin and Burchstead violated her due process rights, specifically her constitutional right to a fair trial and her right to a meaningful opportunity to present a full and complete defense under the 5th, 6th and 14th Amendments to the U.S. Constitution."

Am. Compl., ECF No. 50 at ¶¶ 20(f), 20(k) (alteration and emphasis in original).

Given that part of Plaintiff's claims includes allegations that she was indicted and vindictively

---

possibly also, Brian Kelly, Law Clerk – Work product. Includes handwritten work product post-it type note of Burchstead stuck onto email of Plaintiff's counsel on June 17, 2013. That email is produced. The note is withheld[.]"
- **Category 6O**: "Order and Judgment in another case in Trial Prep. folder. Work Product and may also be unresponsive to subpoena."
- **Category 6R**: "Redaction of two sentences in email of Bare/Abee to Powell dated July 23, 2013 and email strings regarding comments about coverage by media source. Communication would be subject to attorney client and work product privileges. Remainder of emails are provided."
- **Category 6V**: "Case and ethics opinion – work product and may also be unresponsive to subpoena as the documents do not reference Plaintiff."
- **Category 6W**: "Notes attached to letter from Plaintiff's counsel to Wines, September 17, 2012."
- **Category 6X**: "Letter to Wines from Plaintiff's counsel, March 23, 2012 with highlighting and Copy of Memorandum of Law in Support of Motion to Quash with notes penned in and Memorandum of Law in Opposition to MTQ with notes and highlighting. Highlighting and notes are work product."
- **Category 6Z**: "Post-it notes (Deb Staberg and Pauling to McDougall) redacted as to receipt and assignment of case in 12-21-11 letter to McIntosh from McLaughlin. Work product"
- **Category 6BB**: "Two printings of statute – one with brackets and discussion of case law and elements which may be for research, jury instructions or closing argument all of which would be work product and which may be unproductive as they do not reference Plaintiff. Documents appear to include draft charges or draft closing argument which would be work product."
- **Category 6CC**: "Highlighting redacted on news articles of 11-9-2011, 11-15-2011 and 11-18-2011 and on privilege log – work product"
- **Category 6DD**: "Post-it note on second page of Follin interview of Plaintiff redacted – work product"

33

prosecuted in retaliation to her not being able to provide law enforcement with information about "**other** matters in Timmonsville," the Court finds that the following categories contain information relevant to those claims and that the Magistrate Judge erred in concluding otherwise: Categories 6G, 6J, 6K, 6L, 6N, 6O, 6R, 6V, 6W, 6X, 6Z, 6BB, 6CC, 6DD.

Plaintiff asserts in her objections that if "the communications in any way reveal the **motivations/mental impressions** of SCAG agents in pursuing the prosecution of [Plaintiff], they are discoverable." Pl.'s Objs. at 15 (emphasis added). To the extent that Plaintiff argues opinion work product in these categories is discoverable, the Court rejects Plaintiff's argument for the same reasons discussed in the previous section of this Order—opinion work product, such as "motivations/mental impressions,"[43] is not discoverable absent a showing of a rare and extraordinary circumstance, which is not present in this case. *See Allen*, 106 F.3d at 607; *In re Doe*, 662 F.2d at 1080. Accordingly, the Court overrules Plaintiff's final objection.

### B.    Irrelevant Categories: 6H, 6I, 6T[44]

---

[43]    As more fully discussed in footnote 37 of this Order, the district court in *Duplan II* applied the "at issue" exception and ordered production of opinion work product because there were allegations of an antitrust conspiracy and fraud; the district court found the "opinion work product materials" were "operative facts as to the *motive* and *intent* of the parties" and thus relevant to the conspiracy and fraud allegations. *See Duplan II*, 509 F.2d at 734 n.7 (emphasis added). On appeal, the Fourth Circuit overturned the district court's ruling and rejected the notion that mental impressions and motivations are discoverable simply because they are at issue as "operative fact[s]" in the case. *Id.* at 734-36. The Court's conclusion in the instant case—that "motivations/mental impressions of SCAG agents" are not discoverable simply because Plaintiff has alleged a civil conspiracy involving SCAG attorneys—is consistent with *Duplan II*. Moreover, as discussed in footnote 37, Plaintiff has failed to make a sufficient prima facie showing that the crime/fraud/tort exception applies in this case.

[44]    Categories 6H, 6I, and 6T are described in SCAG's privilege log, *see* ECF No. 93-2, as follows:

- **Category 6H**: Emails with attachments containing "power-points referencing Washington," which "will be produced upon request without waiving the work product defense to releasing them. References to other cases will be redacted as unresponsive and work product as to those cases."
- **Category 6I**: "Emails on November 10, 2014 from Abee to Weiss with a copy to David Fernandez, AAG, requesting travel approval for an unrelated case and referring to hotel as being used for the Washington case. Weiss email of same date forwards request to McIntosh, CDAG, for approval. The email from Abee is work product privileged as to the other case, and both are

The Court finds Categories 6H, 6I, and 6T are irrelevant to Plaintiff's allegations or claims, and therefore denies production of the documents contained therein.

<u>Conclusion</u>

The Court has reviewed the entire record in this case, including the Magistrate Judge's order granting in part and denying in part Plaintiff's second motion to compel, Plaintiff's objections, and the Attorney General's reply. *See* ECF Nos. 110, 115, 122, 123, 124, & 125. The Court has conducted an exhaustive, page-by-page in camera review of the documents filed under seal. For the reasons explained above, the Court **AFFIRMS AS MODIFIED** the Magistrate Judge's order [ECF No. 110]. The Court **ORDERS** SCAG to produce the following documents or portions of documents from Myrick's and Burchstead's employee job performance evaluation files:[45]

- **From Myrick's file:**

  (1)  Page 1: "Evaluation From June 17, 2012 To December 17, 2012"
  (2)  Pages 3-4: "Instructions"
  (3)  Page 5: "Three Levels of Performance"
  (3)  Page 6: "Job Duties"; specifically the portion of this page containing "3. Job Duty"
  (4)  Page 13: Email from Tammie Wilson to John W. McIntosh regarding Myrick's performance evaluation for the period of June 2011 to June 2012
  (5)  Page 14: "Three Levels of Performance"
  (6)  Page 15: "Job Duties"; specifically the portion of this page containing "C. Job Duty"

---

unresponsive as to the Washington subpoena."

- **Category 6T**: "A series of several emails were forwarded to Megan Burchstead on November 16, 2012 from herself apparently due to the changeover of office email system to Outlook and possibly due to her name change. The forwarded emails should otherwise be included in the documents provided or listed in the privilege log. The forwarding emails are withheld as unresponsive or privileged unless otherwise provided."

[45]    In an August 24, 2015 letter to the Magistrate Judge, SCAG requested it "be allowed ten days to request protections re the viewing, use or possession of the documents" in the event the Magistrate Judge ordered production of any documents. ECF No. 108 at 1. The Magistrate Judge granted this request and afforded SCAG ten days to request protection for the documents she ordered be produced. ECF No. 110 at 10. In light of SCAG's letter and the Magistrate Judge's grant of protection, the Court will afford SCAG ten days to request protection for the documents the Court has ordered be produced.

• **From Burchstead's file:**

(1)     Page 10: "Performance Review From January 17, 2013 To January 17, 2014"
(2)     Page 11: "Instructions"
(3)     Page 12: "Three Levels of Performance"
(4)     Page 13: "Job Duties"; specifically the portion of this page containing "1. Job Duty"
(5)     Page 19: "Evaluation From January 17, 2012 To January 17, 2013"
(6)     Page 21: "Instructions"
(7)     Page 22: "Three Levels of Performance"
(8)     Page 23: "Job Duties"; specifically the portion of this page containing "1. Job Duty"

The parties are **DIRECTED** to submit a proposed amended scheduling order within ten days of the filing of this Order.[46]

**IT IS SO ORDERED.**


Florence, South Carolina                                 s/ R. Bryan Harwell
April 22, 2016                                            R. Bryan Harwell
                                                         United States District Judge

---

[46]     On July 15, 2015, Defendants filed a motion to stay the deadlines in the Third Amended Scheduling Order pending the outcome of the discovery dispute; Plaintiff consented to the motion.  ECF No. 99.  The Magistrate Judge granted the motion in a docket text order.  ECF No. 100.